# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 16, 2002 Session

## KENNETH P. BONDURANT and HUGH PETER BONDURANT
## v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Circuit Court for Giles County**
**No. 8457 & 8458      Stella Hargrove, Judge**

---

**No. M2000-02287-CCA-R3-PC - Filed October 30, 2002**

---

The appellants, Kenneth P. Bondurant and Hugh Peter Bondurant, appeal from the dismissal of their post-conviction petitions following a hearing on the question of whether the petitions were filed within the time prescribed under Tennessee Code Annotated section 40-30-202(a). The trial court found from the evidence presented that the petitions were filed more than one year from the final action of the highest appellate court to which an appeal was taken and that the petitions were time barred. As a result the petitions were dismissed.

In this appeal the appellants present two issues for our consideration. First, the appellants challenge whether the trial court erred in finding that the first post-conviction petitions filed by the appellants from prison were mailed beyond the applicable statute of limitations. Second, the appellants ask us to interpret Tennessee Code Annotated section 40-30-202(a) so as to begin the running of the statute of limitations from the date the highest appellate court's mandate is filed on direct appeal. We find no error in the findings of the trial court, and we decline to interpret Tennessee Code Annotated section 40-30-202(a) in the manner urged by the appellants. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Joe W. Henry, Jr., Pulaski, Tennessee, for the appellant, Kenneth P. Bondurant and William Barnes, Columbia, Tennessee, for the appellant, Hugh Peter Bondurant.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Mike Bottoms, District Attorney General for the appellee, State of Tennessee.

# OPINION

## Factual Background

The appellants were convicted of second degree murder and sentenced to twenty-five years in prison. Their convictions were affirmed by this Court in State v. Kenneth Patterson Bondurant, No. 01C01-9501-CC-00023, 1996 Tenn. Crim. App. LEXIS 322 (Tenn. Crim. App. At Nashville, May 24, 1996). A factual summary of the facts underlying the convictions may be found in that opinion. See id. At *2 - *16. The Tennessee Supreme Court denied the appellants permission to appeal, concurring in results only on November 12, 1996.

On November 26, 1997, the appellants filed petitions for post-conviction relief. It is apparent that this date is two weeks beyond the one year anniversary of our supreme court's denial of permission to appeal the convictions. However, the appellants claim that they originally mailed post-conviction petitions from prison on October 21, 1997, within the one year statute of limitations period. According to the appellants, their November 26 petitions were filed only when they discovered that the October petitions had never been received by the trial court clerk. Because they were inmates and had mailed their original petitions within one year of the anniversary of the Tennessee Supreme Court's action on their direct appeal, the appellants maintained in the trial court and in this appeal that the petitions were timely filed pursuant to Tennessee Supreme Court Rule 28 § 2(G); and Tenn. R. Crim. P. 49(c). The State contended in the lower court that the appellants never mailed any petitions in October, that the November petitions were time-barred, and that the October petitions were concocted in order to circumvent the statute of limitations.

On August 17, 2000, the trial court held an evidentiary hearing on the issue of whether the appellants had mailed petitions to the trial court clerk in a timely fashion under the applicable statute of limitations and court rules. At the hearing Hugh Peter Bondurant, Jr. ("Pete") testified that he prepared post-conviction petitions for both himself and his brother, Kenneth P. Bondurant ("Pat"), in October of 1997. Due to a lack of money the brothers decided to mail the petitions in regular prison mail rather than by certified mail. Pete Bondurant testified that mail is frequently stolen from prison mail boxes.

He identified exhibits nine and ten as copies of the purported October petitions. Both petitions have a notary of October 16, 1997, and an alleged mailing date of October 21, 1997. Pete Bondurant subsequently testified that he could not remember if he mailed both petitions or if his brother mailed his petition separately. His brother, Pat, was in the high security section of the prison at the time.

Bondurant testified that when he sent something to Ms. Callahan, the Giles County court clerk, he always enclosed a self-addressed stamped envelope and a cover letter to be stamp-filed. As an inmate legal helper, he knew that time was important, and so when he never received anything back from the clerk's office, he mailed another set of petitions, which were photocopies of the first set, in November.

He acknowledged that the November petitions were sent with cover letters, and that neither the November petitions nor the cover letters made any mention of a previous filing. The November petitions were dated November 24, 1997, for Pat Bondurant and November 22, 1997, for Pete Bondurant. Bondurant asserted that he had receipts showing that he had paid to have petitions

notarized in October and that although he failed to bring them to the hearing he would provide them to the court.

At the end of this hearing, the trial court allowed both sides to late-file exhibits. Among these is what appears to be a cover letter written by another inmate legal helper, Danny Meeks, dated November 23, 1997, informing the Giles County clerk's office that two post-conviction petitions for Pat and Pete Bondurant were enclosed and asking that they be back dated to October 21. Another late-filed exhibit filed by the State shows only that one or both of the Bondurants had something notarized on October 16, 1997. Neither appellant filed any receipts for money paid for notarizing the documents. On September 6, 2000, the trial court entered an order finding that Pete Bondurant's testimony concerning the October petitions was not credible and that the November petitions should be dismissed as time-barred.

Following the filing of a Motion to Reconsider the September 6, 2000, order, on February 9, 2001, the trial court held another hearing regarding one of the late-filed exhibits from Pat Bondurant, a prison library log book purporting to show an entry on October 16 that said, "post picked up, mailed." There was no testimony from Pat Bondurant about the log book.

Melba Espinoza, the library supervisor at Riverbend Prison, testified that she knew both of the appellants and that at one time, Pete Bondurant had a job in the library as a legal helper. She said the library log book was primarily used for keeping track of which items had been checked out of the library by inmates in the high security section of the prison (the "high side"), although she acknowledged that some entries did appear to reflect matters relating to legal correspondence that had been sent from one inmate to another. She identified the entry in question as showing that on October 16 Pat Bondurant had checked out a book called "Bitterroot." Underneath that entry is the notation "post picked up, mailed."

Ms. Espinoza said she started working in the library in September of 1997 and had never noticed the entry until Pat Bondurant requested a copy of the page in October of 2000. Ms. Espinoza testified that inmates are not permitted to mail items from the library and that all mail has to go through the mail room.

She testified that entries in the book are usually made in gray or black ink, as opposed to the blue ink used on the entry in question, but also acknowledged that sometimes blue ink had been used elsewhere in the book. She stated that as a general rule, a blank line was left between entries, which was not done with the entry in question, but she acknowledged that there were a couple of other instances in the logbook when no blank lines had been left. Finally, she said she was familiar with Pete Bondurant's handwriting, and that, after comparing the logbook entry with a sample of Pete Bondurant's handwriting, the entry appeared to be in Pete's handwriting.

Regarding Danny Meeks, she testified that while Meeks was an inmate legal helper, he would not have had access to the "high side" or maximum security where Pat Bondurant was incarcerated during the period of time when Meeks claimed to be helping Pat with his petition. However, Meeks was housed in the same unit at the prison as Pete Bondurant.

On February 13, 2001, the trial court found the library log entry "had no merit" and reaffirmed the September 6, 2000, order dismissing the petitions.

<u>The October Post-Conviction Petitions</u>

As noted, both appellants claim that in October, 1997, within one year of the supreme court's order denying permission to appeal their convictions, they mailed post-conviction petitions to the trial court clerk from Riverbend Prison. Tennessee Rules of Criminal Procedure 49(c) provides, in pertinent part, that

> [i]f papers required or permitted to be filed pursuant to the rules of criminal procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerks of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing.

Tenn. R. Crim. P. 49(c).

Similarly, Supreme Court Rule 28 § 2(g) provides that

> [i[f papers required or permitted to be filed by these rules are prepared by or on behalf of a pro se petitioner incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing.

Tenn. Sup. Ct. R 28 § 2(G).

The question of whether the appellants did mail their post-conviction petitions in October, 1997, as they claim, is one of fact to be determined by the trial judge. <u>See</u> <u>State v. Vickers</u>, 970 S.W.2d 444, 448 (Tenn. 1998) (holding that a trial court may conduct an evidentiary fact-finding proceeding as to statute of limitations issues unrelated to questions of guilt or innocence.) The findings of fact of a trial judge in a post-conviction proceeding are conclusive on appeal unless the evidence preponderates against those findings. <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn. 1997).

In the instant case the trial judge found that Pete Bondurant's testimony regarding the October petitions was not credible. Having viewed the witness face to face and seen his demeanor, etc., we are not prepared to second guess the trial judge's findings in that regard. Moreover, the proof introduced by the appellants to show that they had mailed post-conviction petitions in October, 1997 is highly suspect. The appellants were unable to corroborate Pete Bondurant's testimony with documentation as promised at the February 9 hearing. The only document introduced in this regard was an exhibit filed by the State showing that something was notarized for the Bondurants on October 16, 1997. The cover letters accompanying the November post-conviction petitions made no reference to the October petitions, a curious fact indeed when one considers that the lack of a response from the trial court clerk as to the filing of the October petitions was the only reason the November petitions were mailed. Moreover, the letter from inmate legal helper Danny Meeks concerning his involvement with the Bondurants is of dubious value when one considers that at the time relevant to the questions raised here, Meeks had no access to Pat Bondurant. Finally, the rather

cavalier way in which Pete Bondurant testified that he handled the mailing of the October petitions, i.e. mailing from the prison library in a mail box from which items are frequently stolen, coupled with the curious appearance in October, 2000, of the notation on the library log book certainly made the appellant's story about the October 1997 petitions appear incredible.

## The November Post-Conviction Petitions

Tennessee Code Annotated section 40-30-202(a) provides, in pertinent part, that a petition for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which" the direct appeal was carried. Tenn. Code Ann. § 40-30-202(a). As noted earlier the appellants maintain that the time for filing a post-conviction petition does not begin to run until the mandate of the Supreme Court of Tennessee issues following the denial of permission to appeal. In this case the appellants filed an exhibit in the trial court which reflects that although the order of the Tennessee Supreme Court denying the application for permission to appeal was entered on November 12, 1996, a mandate was not issued until November 25, 1996, almost two (2) weeks later. This exhibit consists of a record abstract from the appellate court clerk's office. Thus, the appellants maintain the post-conviction petitions mailed on November 21 and 24, 1997, were filed within the applicable statute of limitations.

However, our examination of the exhibit from the appellate clerk's office coupled with our reading of Tennessee Rules of Appellate Procedure 42 leads us to the conclusion that the mandate issued from the appellate clerk's office on November 25, 1996, was not the mandate of the Tennessee Supreme Court, but rather was the mandate of this Court.

Tennessee Rules of Appellate Procedure 42(a) specifies that the mandate of the supreme court shall be issued by the appellate clerk eleven days "after entry of <u>the judgment</u> unless the court orders otherwise." Tenn. R. App. P. 42(a) (emphasis added.). The rule does not contemplate a supreme court mandate when the supreme court denies an application for permission to appeal. Indeed, in this latter case Rule 42(b) directs the appellate clerk to issue the mandate of the intermediate appellate court "<u>immediately</u>". Tenn. R. App. P. 42(b) (emphasis added.) For some reason, despite Rule 42(b)'s admonition, the mandate of this Court apparently did not issue for almost two weeks following the supreme court's denial of permission to appeal on November 12, 1996. In any case the final judgment of the "highest state appellate court to which an appeal is taken . . ." (The Tennessee Supreme Court), was entered on November 12, 1996. Thus, the appellants had until November 12, 1997 in which to file their post-conviction petitions or be barred by the statute of limitations. Having failed to mail the November, 1997 petitions on or before November 12 of 1997, the appellant's petitions are barred by Tennessee Code Annotated section 40-30-202(a).

## Conclusion

In light of the foregoing the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

-5-